SEYFARTH SHAW LLP
Elisabeth Watson (SBN 184332)
ewatson@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

SEYFARTH SHAW LLP
Laura E. Heyne (SBN 279478)
lheyne@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; and ROSA CABRERA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ELIZABETH CLAIBORNE,

Plaintiff,

v.

THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; ROSA CABRERA and DOES 1 to 100, inclusive,

Defendants.

Case No. 2:24-cv-05571-MRA-AGR

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Judge: Hon. Monica Ramirez Almandani

[Filed concurrently with Declarations of Rosa Cabrera, John H. Gordon, and Greg Boardman]

Date: September 19, 2024
Time: 1:30 p.m.
Location: First Street Courthouse
350 W. 1st Street, Courtroom 10A, 10th Floor
Los Angeles, CA 90012

# TABLE OF CONTENTS


PAGE

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. Pertinent Factual Background ........ 2

1. Plaintiff Worked As A Customer Service Exit Gate Associate At Hertz's LAX Location Subject To A Collective Bargaining Agreement With The Teamsters Union 495 ........ 2

2. Hertz Approved Plaintiff's Request For A Leave Of Absence Shortly After She Started, But Extended Her Probationary Period ........ 3

3. First Termination: Hertz Terminated Plaintiff On June 9, 2023 For Poor Attendance But Reinstated Her After She Filed A Union Grievance -- The Parties Disputed Ambiguity Under The CBA Regarding Extension of Plaintiff's Probationary Period And Application of CBA ........ 4

4. Second Termination: Hertz Terminated Plaintiff Again On July 27, 2023 For Gross Insubordination – Plaintiff Disputes That Her Conduct Constitutes A "Refusal" Of An Order Under The CBA ........ 5

B. Plaintiff's Lawsuit ........ 6

III. REMOVAL WAS PROPER BECAUSE THIS CASE INVOLVES FEDERAL QUESTIONS UNDER THE LABOR MANAGEMENT RELATIONS ACT ........ 7

A. Resolution of Plaintiff's Wrongful Termination And Related Claims Will Require Interpretation Of The CBA – Thus These Claims Are Preempted By The LMRA ........ 7

B. It Is Immaterial That Plaintiff Only Alleges State Law Claims ........ 10

C. The LMRA Authority Cited By Plaintiff Is Distinguishable ........ 11

IV. REMOVAL WAS ALSO PROPER BASED ON DIVERSITY JURISDICTION BECAUSE THE INDIVIDUAL DEFENDANT ROSA CABRERA IS A SHAM DEFENDANT ........ 12

A. Cabrera's Citizenship Does Not Defeat Diversity Jurisdiction Because She Is A Sham Defendant ........ 12

1. Plaintiff's Harassment Claim Against Cabrera Fails Because Plaintiff Has Not And Cannot Identify Sufficiently "Severe Or Pervasive" Conduct By Cabrera To Make Her Potentially Liable ........ 13

2. Plaintiff's IIED Claim Against Cabrera Fails Because Plaintiff Has Not And Cannot Identify "Extreme Or Outrageous" Conduct By Cabrera ....... 15

3. Plaintiff's Wage Hour Claims Against Cabrera Fail Because Plaintiff Has Not, And Cannot, Show That Cabrera Is A Managing Agent Under Labor Code Section 558.1 ....... 16

B. Plaintiff's Hostile Work Environment And IIED Claims Are Preempted By The Exclusive Remedies Of California's Workers' Compensation Act And Barred By The Managerial Privilege ....... 17

1. The WCA Preempts Plaintiff's Claims ....... 17

2. The Managerial Privilege Also Precludes Plaintiff's Claims ....... 19

C. The Citizenship Of The Doe Defendants Must Be Disregarded When Assessing Diversity ....... 19

V. PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED ....... 20

VI. CONCLUSION ....... 20

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008) .......... 8

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) .......... 9

*Burnside v. Keiwit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007) .......... 1, 9

*Busey v. P. W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045 (N.D. Cal. 2005) .......... 11

*Caterpillar, Inc. v, Williams*, 482 U.S. 386 (1987) .......... 8, 11

*Hall v. North American Van Lines, Inc.*, 476 F.3d 683 (9th Cir. 2007) .......... 10, 11

*Lewis v. Time Inc.* 83 F.R.D. 455 (E.D. Cal. 1979) .......... 13

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005) .......... 20

*McCabe v. Gen. Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987) .......... 12, 13

*McCabe v. Gen. Foods Corp.*, F.2d 1336 (9th Cir. 1987) .......... 19

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) .......... 13

*Metropolitan Lire, Ins. Co. v. Taylor*, 481 U.S. 58 (1987) .......... 9

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) .......... 12

*N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995) .......... 12

*Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir. 1988) .......... 9

*Northern Calif. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.* (9th Cir. 1995) 69 F3d 1034 .......... 12

*Perugini v. Safeway Stores, Inc.*,
935 F.2d 1083 (9th Cir. 1991) .......... 8

*Voorhees v. Naper Aero Club, Inc.*,
272 F.3d 398 (7th Cir. 2001) .......... 8

*Young v. Anthony's Fish Grottos, Inc.*,
830 F.2d 993 (9th Cir. 1987) .......... 8

**California Cases**

*Ankeny v. Lockheed Missiles and Space Co.*,
88 Cal. App. 3d 531 (1979) .......... 15

*Cole v. Fair Oaks Fire Protect. Dist.*,
43 Cal. 3d 148 (1987) .......... 17, 18

*Davidson v. City of Westminster*,
32 Cal. 3d 197 (1982) .......... 15

*Davis v. Kiewit Pacific Co.*,
220 Cal. App. 4th 358 (2013) .......... 16

*Fisher v. San Pedro Peninsula Hospital*,
214 Cal. App. 3d 590 (1989) .......... 13

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) .......... 13

*Jones v. R.J. Donovan Corr. Facility*,
152 Cal. App. 4th 1367 (2007) .......... 18

*Livitsanos v. Superior Court*,
2 Cal. 4th 744 (1992) .......... 18

*Lyle v. Warner Bros. Television Prods.*,
38 Cal. 4th 264 (2006) .......... 13

*Melendez v. S.F. Baseball Assocs. LLC*,
7 Cal.5th 1 (2019) .......... 11

*Mokler v. County of Orange*,
157 Cal. App. 4th 121 (2007) .......... 13

*Smith v. Int'l Bhd. of Elect. Workers, Local Union*
11, 109 Cal. App. 4th 1637 (2003) .......... 19

*White v. Ultramar*,
21 Cal. 4th 563 (1999) .......... 16

*Yurick v. Superior Court*,
209 Cal. App. 3d 1116 (1989) .......... 15

**Federal Statutes**

28 U.S.C.
§ 1331 ... 7
§ 1332(a) ... 19
§ 1332(a) (1) ... 12
§ 1441 ... 7
§ 1441(a) ... 12, 19
§ 1441(a)(1) ... 19
§ 1441(b) ... 11
§ 1447(c) ... 12, 20

29 U.S.C.
§ 185(a) ... 7, 8
§ 185 *et seq*. ... 7

**California Statutes**

Cal. Labor Code
§ 3601 ... 17

California's Workers' Compensation Act ... 17, 18

Civil Code
§ 3294(b) ... 16

Labor Code
§ 201 ... 11
§ 558.1 ... 2, 7, 16

Labor Management Relations Act ... 7, 8, 9, 11

Labor Management Relations Act
§ 301 ... *passim*

## I. INTRODUCTION

Plaintiff Elizabeth Claiborne's Motion to Remand ("Motion to Remand") should be denied. Defendants properly removed this wrongful termination lawsuit to Federal Court based on federal question and diversity jurisdiction.

There is federal question jurisdiction because the Section 301 Labor Management Relations Act broadly preempts the state law claims that either (1) arise from collectively bargained agreements *or* (2) require interpretation of such agreements. *Burnside v. Keiwit Pac. Corp*., 491 F.3d 1053, 1059 (9th Cir. 2007). Here, Plaintiff was a union employee who contends that Hertz failed to follow the CBA when it terminated her twice, due to discrimination and retaliation. In order to decide her claims, the Court will need to interpret ambiguities in the CBA, including whether Hertz's extension of her probationary period longer than 90 days was effective under the CBA without union approval and thus, which termination rules applied (Plaintiff states in her Complaint that she grieved her first termination) and whether Plaintiff's misconduct rose to the level of a "refusal" to follow orders and "gross insubordination" as defined under the CBA as a basis for her second termination (Plaintiff also grieved her second termination). The applicable CBA is silent on both of these issues and will require interpretation. Section 301 preemption applies and creates a federal question due to the well-plead complaint rule even though Plaintiff only alleges state-law claims and even though she only references her Union, the CBA, and her grievance in passing in her Complaint.

Second, there is diversity jurisdiction because Rosa Cabrera, Plaintiff's supervisor and the only California defendant, is a sham defendant. Thus, her citizenship must be disregarded. Plaintiff has not and cannot plead any viable claims against Cabrera. The harassment claim fails as to Cabrera because Plaintiff fails to identify in her Complaint any specific comments or conduct by Cabrera. Plaintiff alleges that Cabrera "and other employees" engaged in harassing conduct, **but she fails to state what Cabrera (as opposed to the other employees)** allegedly did or said that rose to the level of "severe or pervasive" conduct. The intentional infliction of emotional distress claim fails for similar

reasons--Plaintiff failed to identify what it was that Cabrera did or said or that it rose to the level of "extreme and outrageous" conduct. Plaintiff's wage hour claims fail as to Cabrera because Plaintiff cannot establish that Cabrera is a "managing agent" under Section 558.1 in light of Cabrera's declaration stating that she is a line Manager with no authority to set corporate policy and Plaintiff's failure to submit supporting evidence with her motion.

Regardless of the outcome, Plaintiff's request for sanctions should be denied. Sanctions are only awarded in extraordinary circumstances that are not applicable here. Defendants had good faith arguments for removal based in fact and law.

For all of these reasons, Defendants request Plaintiff's Motion to Remand be denied, and that this case remain in Federal Court.

## II. STATEMENT OF FACTS

### A. Pertinent Factual Background

#### 1. Plaintiff Worked As A Customer Service Exit Gate Associate At Hertz's LAX Location Subject To A Collective Bargaining Agreement With The Teamsters Union 495

Hertz is a global rental car company with operations around the world, including at most major airports. Defendant Hertz Corporation hired Plaintiff on February 9, 2023 as a Flex Customer Service Exit Gate Associate at the Los Angeles Metro RAC Operations at the Los Angles Airport ("LAX"). (Compl., ¶ 17-18; Boardman Decl.,¶ 4, **Ex. A**). Plaintiff reported to several supervisors, including individual defendant Rosa Cabrera, an Area Administrative Manager at the LAX, only responsible for portions of the LAX location. (Compl., ¶ 16; Boardman, ¶ 12; Cabrera Decl., ¶ 4). Plaintiff was never employed by defendant Hertz Global Holdings, Inc., which is the parent company for Hertz Corporation.

Plaintiff was a member of the Teamsters Local Union No. 495 (the "Union"). (Boardman Decl., ¶ 5). Plaintiff's employment was governed by the Collective Bargaining Agreement Between the Hertz Corporation Inc. and Teamsters Local Union No. 495 ("CBA"). (Boardman Decl., ¶ 5, **Ex. B**).

Plaintiff started as a probationary employee pursuant to Article 2 (Seniority), Section 1 of the CBA, which states: "All new employees shall be regarded as probationary for the first ninety (90) calendar days." (CBA, Article 2). Pursuant to Article 2, Section 1 of the CBA, probationary employees can be terminated at-will without recourse under the grievance procedure: "Each such employee may be terminated with or without cause and without recourse to the grievance procedure during their probationary period." (*Id.)*

Article 17 of the CBA (Conduct of Employees) sets forth the required procedures to terminate a Union employee after the probationary period and states, in part, "[t]he Employer will not discharge or suspend any employee without just cause. The Employer shall give at least two (2) warnings of the complaint against such employee in writing to the Union and the employee and one (1) suspension before he/she is discharged for a repetition of the same or similar complaint…." (CBA, Article 17). However, per Article 17, no written notice is required under the CBA to terminate for "gross insubordination," which the CBA defines as "gross insubordination, i.e., continued **refusal** of a direct order from supervision, said order being given three times." (*Id*., *emphasis added*).

The CBA also contains other provisions that will be relevant to the claims in the Complaint, such as the provisions regarding the payment of wages (Article 13), paid sick leave (Article 19), bereavement leave (Article 20), and leaves of absence (Article 21) among other things. (**Ex. B,** CBA).

### 2. Hertz Approved Plaintiff's Request For A Leave Of Absence Shortly After She Started, But Extended Her Probationary Period

Shortly after Plaintiff started, Hertz granted Plaintiff's request for a two and a half week leave of absence (from March 1-16, 2023) for a "family emergency." (Boardman Decl., ¶ 6, **Ex. C**). In light of the fact that Plaintiff had yet not been employed for the requisite 90-day probation period, Hertz extended her probationary period to account for her leave of absence. (*Id*.).

### 3. First Termination: Hertz Terminated Plaintiff On June 9, 2023 For Poor Attendance But Reinstated Her After She Filed A Union Grievance -- The Parties Disputed Ambiguity Under The CBA Regarding Extension of Plaintiff's Probationary Period And Application of CBA

On March 17, 2023, following Plaintiff's return from her leave, Plaintiff began having significant attendance issue. Plaintiff was a "no call, no show" on March 23, March 27, and April 3, 2023. (Boardman Decl., ¶ 7, **Ex. D**; Cabrera Decl., ¶ 7, **Ex. M**). At this point, Plaintiff had only been employed with Hertz for approximately 60 days and had already accumulated 2.5 unexcused attendance points. (*Id.*) Accordingly, Hertz gave Plaintiff a probation letter regarding, among other things, Plaintiff's poor attendance and need for improvement. (*Id.*) Plaintiff was advised that she needed to maintain proper attendance by June 10, 2023, in order to pass her probationary period. (*Id.*)

By June 8, 2023, Plaintiff had already accumulated 19 attendance points. Accordingly, Hertz terminated Plaintiff's employment effective June 9, 2023. (Boardman Decl., ¶ 8, Exs. E and F). Hertz did not follow Union procedure under Article 7 of the CBA because Hertz believed it was inapplicable given that Plaintiff was still in her probationary period (as extended). (Boardman Decl., ¶ 9; Cabrera Decl., ¶ 9).

As Plaintiff notes in her Complaint, on June 16, 2023, Plaintiff filed a grievance with the Union claiming wrongful termination. By filing a grievance with the Union, Plaintiff sought the protections of the CBA as applied to her employment (and termination). However, as noted above, because Hertz had extended her probationary period, Hertz's position was that the CBA process did not apply. (Compl., ¶55; Boardman Decl., ¶ 9; Cabrera Decl., ¶ 9).

The CBA is silent on the procedure for and effect of extending an employee's probationary period in the event an employee takes leave during the probationary period. On June 21, 2023, Plaintiff's union grievance was denied. (Boardman Decl., ¶ 10, **Ex. G**). However, Hertz gave Plaintiff a second chance, reinstated her to her position, provided backpay for the missed time, and entered into a "Last Chance Agreement"

whereby Plaintiff agreed to maintain good attendance. (Compl., ¶55; Boardman Decl., ¶ 10, Ex. H).

### 4. Second Termination: Hertz Terminated Plaintiff Again On July 27, 2023 For Gross Insubordination – Plaintiff Disputes That Her Conduct Constitutes A "Refusal" Of An Order Under The CBA

On July 6, 2023, Plaintiff clocked into work, and was asked by management work in 700's section as a Greeter. (Gordon Decl., ¶¶ 5-6, **Ex. J**). Approximately an hour later, Operations Manager Ailu Ramirez noticed that there was no one located in the 700's section to greet customers. After some time, Ramirez located Plaintiff in the VIP Gold Department. According to Ramirez, the conversation went as follows:

Liz: Hey!

[Ramirez]: Where are you supposed to be?

Liz: 700s

[Ramirez]: Ok, so why are you in Gold?

Liz: I came to drink some water. What I can't come drink water?

[Ramirez]: Responding in confusion, you can but you didn't think to take your water with you when Eric asked you to greet in the 700s 45 minutes ago? That way you wouldn't have to be coming back and forth."

(Gordon Decl., ¶¶ 5-6, **Ex. J**).

Ramirez then instructed Plaintiff three times to return to the 700's. (*Id.*) Plaintiff refused and walked away. (*Id.)* Accordingly, Plaintiff was suspended pending an investigation. (*Id*. at **Ex. K**).

On July 12, 2023, Plaintiff filed a second grievance with the Union. (*Id*. at ¶ 7).

During the investigation, Plaintiff told Human Resources and Assistant General Manager John H. Gordon that she only told Ramirez "we aren't doing this today," which in Plaintiff's view, was not "insubordinate" and not a "refusal" of Ramirez's order to return to the 700s within the meaning of Article 17 of the CBA. (*Id.*) Plaintiff also

informed Human Resources that she was being targeted because "she was brought back by the Union [referring to her first termination]." (Gordon Decl., ¶¶, **Ex. L**).

Hertz disagreed with Plaintiff's interpretation of Article 17 of the CBA and terminated her employment on July 27, 2023. (Boardman Decl., **Ex. I**).

> Dear Elizabeth,
>
> The Hertz Corporation has decided to end your employment based on Violation of Company Policy.
>
> Violation of Local Union 495 Agreement for Los Angeles, Long Beach, Orange County, Ontario, and Burbank Airport Rental Representatives:
>
> **Article 17, Section 1:** Gross insubordination
>
> RAC Policies and Procedures, Employee Rules and Regulations:
>
> The following are many of the most standard serious breaches for which immediate discharge can be initiated.... Insubordination or failure to carry out a direct order or reasonable instruction given by a management representative, including, but not limited to, refusal to work on jobs assigned by Management.
>
> Your employment is ended effective immediately and this document shall serve as your **Termination of Employment.**

### B. Plaintiff's Lawsuit

On May 28, 2024, Plaintiff filed her lawsuit complaint in Los Angeles Superior Court ("Complaint") against the Hertz Defendants and Cabrera. A true and correct copy of the Complaint is attached to the Declaration of Laura E. Heyne ("Heyne Decl.") in Support of Defendant's Remand as Exhibit A. On July 1, 2024, Defendants removed this case to Federal Court based on both diversity jurisdiction and federal question jurisdiction. [Doc. 1]. Plaintiff filed her Motion to Remand on July 31, 2024. [Doc. 15].

Plaintiff alleges in her Complaint that the Hertz Defendants wrongfully terminated her employment and discriminated/retaliated against her by terminating her employment (twice) and not following the applicable CBA before taking adverse action (i.e., she file two Union grievances). (Compl., ¶53, 55, and 94). As stated in Defendants' Removal, Plaintiff asserts nineteen (19) causes of action against the Hertz Defendant. (*See*

*generally*, Ex. A, Complaint).

Plaintiff asserts only six causes of action against her supervisor Cabrera, who she names as an individual defendant: (1) FEHA/hostile work environment (fifth cause of action), (2) intentional infliction of emotional distress ("IIED") (seventeenth cause of action), and (3) four wage hour claims based on Labor Code 558.1 (failure to reimburse expenses (ninth cause of action), failure to pay all wages owed (tenth cause of action), wage statement violations (eleventh cause of action), and failure to pay all wages at termination (twelfth cause of action).

However, Plaintiff's allegations in the Complaint against Cabrera are so conclusory and vague that it is not clear what it is Plaintiff alleges Cabrera did to her. For example, Plaintiff alleges that "CABRERA and other employees" harassed her but she does not identify what it is she alleges that Cabrera did or said (as opposed to the "other employees"). (Compl., ¶20). Similarly, Plaintiff makes a conclusory assertion that Cabrera is a "managing agent" under Labor Code Section 558.1 (Compl., ¶11), but she does not allege any specific supporting facts, nor can she given that Cabrera was merely a supervisor at one location of a global company. Notably, Plaintiff failed to submit a declaration with her Motion to Remand identifying additional, specific evidence to fix these defects (which demonstrates that she cannot do so).

## III. REMOVAL WAS PROPER BECAUSE THIS CASE INVOLVES FEDERAL QUESTIONS UNDER THE LABOR MANAGEMENT RELATIONS ACT

### A. Resolution of Plaintiff's Wrongful Termination And Related Claims Will Require Interpretation Of The CBA – Thus These Claims Are Preempted By The LMRA

This Court has original jurisdiction under 28 U.S.C. section 1331 and thus removal was proper pursuant to 28 U.S.C. section 1441 because this case involved federal questions under section 301 ("Section 301") Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. section 185 *et seq.* Under the LMRA, the district courts of the United States have original jurisdiction over any action involving the interpretation and application of a collective bargaining agreement. 29 U.S.C. § 185(a). Section 301

confers federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185 (a). A collective bargaining agreement is such a contract, and Section 301 preempts all state-law claims "founded directly on rights created by collective bargaining agreements ...." *Caterpillar, Inc. v, Williams*, 482 U.S. 386, 394 (1987).

**State-law claims that require interpretation, analysis, and application of collective bargaining agreements are preempted by the LMRA.** *See e.g., Adkins v. Mireles*, 526 F.3d 531, 540-42 (9th Cir. 2008) (claims for breach of contract and intentional infliction of emotional distress (among others) were preempted by the LMRA because resolution of these claims would require an interpretation of the collective bargaining agreement); *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1087 (9th Cir. 1991) (holding that the employee's discrimination claim was preempted by the LMRA).

**It is immaterial that Plaintiff did not specifically alleged breach of the CBA as one of her claims. Section 301 preempts all state-law claims arising under a collective bargaining agreement—regardless of the pleading—if the claims actually depend on rights conferred by the collective bargaining agreement or require interpretation of a collective bargaining agreement.** *See Williams*, 482 U.S. at 393-94 (explaining that complete preemption occurs where the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule') (citations omitted); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court ... properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction.").

As the United States Supreme Court explained in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985):

> [W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.

*Id*. (citations omitted).

**Thus, any state-law claims for which the resolution is substantially dependent upon the court's analysis of the terms of CBA are preempted by Section 301 of the LMRA.** *See, e.g., Metropolitan Lire, Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement ... and any state claim whose outcome depends on analysis of the terms of the agreement").

The Ninth Circuit reaffirmed that the LMRA broadly applies to preempt claims either (1) arising from collectively bargained agreements *or* (2) requiring interpretation of such agreements. *Burnside v. Keiwit Pac. Corp*., 491 F.3d 1053, 1059 (9th Cir. 2007). Here, both *Burnside* preemption tests are satisfied and provide independent grounds for Section 301 preemption. Not only do Plaintiffs' claims arise from the CBA governing the conditions for Plaintiff's claims, but resolution of Plaintiffs' claims necessarily require interpretation of the terms of the CBA in the following ways.

First, in order to decide Plaintiff's claim that Hertz discriminated/retaliated against her and wrongfully terminated her employment the **first time** on June 9, 2023, the Court will need to interpret Article 11, Section 1 of the CBA to determine whether Hertz's extension of Plaintiff's probationary period was effective without the Union's approval and thus, whether Plaintiff was still an at-will employee in her probationary period at the time without recourse or, alternatively, whether the CBA termination/grievance provisions in Article 7 apply. The CBA is silent as to the process for and effect of an extension of the probation period and thus will require interpretation. Indeed, Plaintiff

references her Union grievance in her Complaint (Compl., ¶ 55), and dispute over her first termination in support of her claim that she was wrongfully terminated and as one of the alleged adverse employment actions. (*Id*.)

Second, in order to decide Plaintiff's claim that Hertz discriminated/retaliated against her and wrongfully terminated her employment the **second time** on July 27, 2023, the Court will need to interpret Article 17, Section 1 of the CBA to determine whether Plaintiff engaged in a "continued **refusal** of a direct order" when she failed to go to the 700's section as directed and whether she engaged in "gross insubordination." The term "refusal" is not defined in the CBA and will require interpretation. Plaintiff alleges that Hertz "did not follow its own internal rules and procedures in taking adverse action against PLAINTIFF." (Compl., ¶ 94). The Court will need to interpret the CBA to determine what those rules were, and how they apply here.

Third, the Court will also need to interpret the provisions in the CBA relating to wages (Article 14), bereavement leaves (Article 20), paid sick (Article 19), and leaves of absence (Article 21) in order to decide Plaintiff's wage hour, paid sick, bereavement leave, and other leave claims.

**B. It Is Immaterial That Plaintiff Only Alleges State Law Claims**

Plaintiff's argument that there is no federal question because she only alleges state law claims fails due to the "well-pleaded complaint" rule. The Complaint involves federal questions because her state law claims are preempted by Section 301 of the LMRA to the extent they require application or interpretation of the CBA even though she hasn't plead any federal claims. As explained by the Ninth Circuit in *Hall v. North American Van Lines, Inc*., 476 F.3d 683, 687 (9th Cir. 2007):

> The absence of a federal claim on the face of [the plaintiff's] complaint does not end our jurisdictional inquiry. Although we usually defer to the plaintiff's choice to plead state law claims, there exist 'a handful of extraordinary situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes ... Under the 'artful pleading' doctrine, a well-pleaded state law claim presents a federal question when a federal statute has completely preempted-that particular

> area of law ....” [A]ny claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id*. at 687; *see also Busey v. P. W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1048, 1053-55 (N.D. Cal. 2005) (“By careful pleading, a plaintiff cannot avoid federal preemption. **Federal courts accordingly must recharacterize complaints which omit federal law essential to a claim, or which cast in state law terms a claim that can be made only under federal law”**) (emphasis added).

Plaintiff’s action, though it purports to raise only state-law claims, is necessarily federal in character, and is removable to the Federal Court pursuant to 28 U.S.C. section 1441(b).

**C. The LMRA Authority Cited By Plaintiff Is Distinguishable**

Plaintiff’s reliance on *Melendez v. S.F. Baseball Assocs. LLC*, 7 Cal.5th 1, 10 (2019) is misplaced because that case is factually distinguishable. *Melendez* was a wage hour class action by a class of security guards alleging that a major league baseball team violated the Labor Code 201 by failing to timely pay their wages immediately after end of series of games or other events. Specifically, the case turned on the interpretation of the meaning of the term “discharge” under Labor Code Section 201. The court found no LMRA preemption because the case involved the interpretation of a statute, not the collective bargaining agreement. *Id.* at 10. That is very different from the situation here, where the Court will need to apply and interpret not just the applicable statutes and law, but also alleged ambiguities in the CBA.

Additionally, while Plaintiff cites to *Caterpillar, Inc. v, Williams*, 482 U.S. 386, 394 (1987) to stand for the presumption that a employers defense of the CBA, alone, cannot be a basis for remand, that is not what we have in the present situation. Rather, as discussed in detail above, not only do Plaintiff’s claims arise out of the CBA, but resolution of her claims **will require** the trier of fact to **interpret** the CBA.

## IV. REMOVAL WAS ALSO PROPER BASED ON DIVERSITY JURISDICTION BECAUSE THE INDIVIDUAL DEFENDANT ROSA CABRERA IS A SHAM DEFENDANT

Removal was also proper based on diversity pursuant to 28 U.S.C. §1332(a) (1). As set forth in Defendants' Removal, federal jurisdiction is proper pursuant to the provisions of 28 U.S.C. §1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

Plaintiff does not dispute in her Motion to Remand that the jurisdictional minimum required for Removal is met (accordingly, Plaintiff has waived any such argument). *N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995) ("§ 1447(c) (a defect in removal cannot be raised after 30 days); *Northern Calif. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.* (9th Cir. 1995) 69 F3d 1034, 1038 (raising defect for first time in reply brief too late).

Plaintiff's argument that individual Defendant Cabrera destroys diversity because she is a citizen of California is wrong. Cabrera's citizenship must be disregarded because she is a sham defendant.

### A. Cabrera's Citizenship Does Not Defeat Diversity Jurisdiction Because She Is A Sham Defendant

The individual defendant Cabrera does not defeat diversity because she is a "sham" defendant; that is, Cabrera cannot be found liable on any of the causes of action alleged against her as a matter of law. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (removal based on diversity of citizenship was proper and that district court "correctly ignored" joinder of a resident defendant after it was shown that plaintiff "could not possible prevail" on her claim against the resident defendant); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.").

When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by

any means available." *Lewis v. Time Inc.* 83 F.R.D. 455, 460 (E.D. Cal. 1979) (**"[I]t is well settled that upon allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder . . . is a sham or fraudulent device to prevent removal.**") (emphasis added); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

Here, Plaintiff has fraudulently named Cabrera as a defendant to her fifth (hostile work environment), ninth (failure to reimburse expenses), tenth (failure to pay all wages owed), eleventh (wage statement violations), twelfth (failure to pay all wages at termination), and seventeenth (IIED) causes of action. None of these claims are viable against Cabrera, and Plaintiff has not rectified this defect in her Removal or any supporting evidence (nor can she).

### 1. Plaintiff's Harassment Claim Against Cabrera Fails Because Plaintiff Has Not And Cannot Identify Sufficiently "Severe Or Pervasive" Conduct By Cabrera To Make Her Potentially Liable

To succeed on her hostile work environment claim **against Cabrera**, Plaintiff must prove that **Cabrera** subjected her to hostile or harassing conduct because of her protected status that was sufficiently "severe or pervasive" so as to alter the conditions of her employment. *See Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). "In determining what constitutes 'sufficiently pervasive' harassment, the courts have held acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 142 (2007); *see Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (summary judgment affirmed for the employer noting that plaintiff alleged only isolated incidents of harassing conduct and no physical assault or threat); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006) (same).

Even repeated instances of verbal abuse, profane language, and threats of job loss are insufficient. *See e.g.*, *Hughes*, 46 Cal. 4th at 1049 (summary judgment affirmed for the employer; a supervisory employee threatened plaintiff's job and plaintiff was told

"I'll get you on your knees eventually. I'm going to fuck you one way or another;" "Most reasonably construed, defendant's comment was a threat … of financial retaliation"). The Complaint contains **no allegations** that Cabrera made any negative or derogatory comments about Plaintiff's protected status ("race/color/ancestry") let alone any comments or conduct that could be considered severe or pervasive.

Plaintiff's harassment allegations in the Complaint against Cabrera are vague and conclusory and essentially just a restatement of the law. Moreover, while Plaintiff alleges that "CABRERA and other employees of EMPLOYERS" engaged in harassment, nowhere in her Complaint does she identify what specific harassing conduct she claims **Cabrera** engaged in as opposed to the unidentified "other employees." **Given that Plaintiff does not even specify what Cabrera did**, Plaintiff failed to meet her burden of alleging that **Cabrera's conduct** was sufficiently severe or pervasive conduct to rise to the level of unlawful harassment that could be actionable under FEHA. For example, Plaintiff's complaint contains the following vague, conclusory allegations as to Cabrera:

- "PLAINTIFF, and other African Americans, were subjected to a hostile work environment, discrimination, mistreated and retaliation based on race, color and ancestry including, but not limited to comments and conduct from CABRERA **and other employees** of EMPLOYERS. CABRERA was directly involved in the hostile work environment, discrimination, and retaliation as were other employees of EMPLOYER." Plaintiff claims that Cabrera and other employees harassed her and identifies comments "they" said but she does not identify which, if any, of these alleged comments Cabrera said. (*Id.*, ¶ 20);

- "PLAINTIFF discovers, and reports, a host of unsafe working conditions and violations of the law to DEFENDANT, **including EMPLOYER and CABRERA**, who do not like the reports and, instead of fixing the reports engage in discrimination, harassment and retaliation by EMPLOYER, as well as violations of the law by DEFENDANTS." (Id., ¶ 37);

- "PLAINTIFF was subjected to a hostile work environment, as well as discrimination and retaliation, based on what was directed at her and what she was aware of from others. Said harassment, discrimination and

retaliation was **done by EMPLOYER and CABRERA**, among others." (Id., ¶ 47); and

Plaintiff failed to submit evidence with her Motion to Remand to fix these deficiencies (and it would be improper for her to do so for the first time in her Reply). Like her Complaint, the allegations in her Motion to Remand are similarly vague and conclusory as to what she claims Cabrera did or how that alleged conduct is sufficiently severe or pervasive to state a viable claim against Cabrera.

### 2. Plaintiff's IIED Claim Against Cabrera Fails Because Plaintiff Has Not And Cannot Identify "Extreme Or Outrageous" Conduct By Cabrera

Cabrera is a sham defendant on the IIED claim for similar reasons. In order to plead and prove IIED **by Cabrera**, Plaintiff must show, among other things, that **Cabrera** engaged in "extreme or outrageous conduct." An essential element of an IIED claim is that the defendant engaged in "extreme and outrageous" conduct. *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). Liability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Ankeny v. Lockheed Missiles and Space Co.*, 88 Cal. App. 3d 531, 536 (1979). "[O]utrageous conduct is that which is the most extremely offensive." *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1129 (1989) (holding that a supervisor's conduct, while "objectively offensive and in breach of common standards of civility, was not so egregiously outside the realm of civilized conduct as to give rise to actionable infliction of emotional distress").

Plaintiff's IIED allegations in the Complaint against Cabrera are vague and conclusory and essentially just a restatement of the law. As noted above, Plaintiff has not identified in her Complaint or her Motion to Remand any specific conduct **by Cabrera,** let alone conduct that could rise to the level of "extreme or outrageous." Plaintiff has not, and cannot, allege any specific conduct as to Cabrera that rise to the level required to establish a claim for IIED and Hostile Work Environment.

### 3. Plaintiff's Wage Hour Claims Against Cabrera Fail Because Plaintiff Has Not, And Cannot, Show That Cabrera Is A Managing Agent Under Labor Code Section 558.1

Carrera is also a sham defendant on Plaintiff's wage hour claims because Plaintiff has not, and cannot, identify facts sufficient to establish personal liability. Generally, employees cannot be held personally liable for the alleged wage hour violations by their employers. Labor Code Section 558.1 creates a narrow exception, but that Section only applies to an "owner, director, officer, or managing agent of the employer." The term "managing agent" has the same meaning (and high standard) as that term is defined in Civil Code §3294(b). To be a "managing agent," the employee must exercise substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy. *White v. Ultramar*, 21 Cal. 4th 563, 573 (1999) ("The managing agent must be someone who exercises substantial discretionary authority over decisions that ultimately determine corporate policy.")

Plaintiff's conclusory allegations, devoid of any specific facts, in Paragraph 11 of the Complaint that Cabrera was a managing agent are insufficient. Plaintiff does nothing more than restate the law and insert Cabrera's name. Plaintiff must have actual evidence and factual allegations supporting a claim that the individual is a "managing agent." *See Davis v. Kiewit Pacific Co.*, 220 Cal. App. 4th 358 (2013) (holding that "simply restating the applicable legal standard under White" for determination whether an employee was a managing agent did not satisfy burden).

Plaintiff failed to identify facts in her Motion to Remand sufficient to overcome this defect. Nor can she. Cabrera was only a line Manager. Cabrera was not an owner, director or officer, and she was not a managing agent. (Cabrera Decl., ¶¶ 2-5 ). As explained in the Declaration of Cabrera, filed concurrently herewith, Hertz is a large company. Cabrera does not "exercise substantial discretionary authority over decisions that ultimately determine corporate policy." (*Id.*). Cabrera did not have authority to draft or create corporate policy. (*Id.*). Cabrera did not have any influence over the making of corporate policy. (*Id.*). Cabrera certainly did not have impact or influence on policies

relating to how Plaintiff was paid. (*Id.*).

There is no conceivable basis to hold Cabrera personally liable for the alleged wage hour violations. Thus, her wage hour causes of action fail as to Cabrera and her citizenship must be disregarded.

### B. Plaintiff's Hostile Work Environment And IIED Claims Are Preempted By The Exclusive Remedies Of California's Workers' Compensation Act And Barred By The Managerial Privilege

Plaintiff's hostile work environment and IIED claims also fail as to Cabrera for the additional reason that they are preempted by California's Workers' Compensation Act ("WCA") and barred by the managerial privilege because Plaintiff **has not alleged any specific conduct by Cabrera that falls outside the course and scope of employment.** Cabrera was Plaintiff's line manager. To the extent Plaintiff's claims are based on Cabrera's personnel management decisions or other conduct that falls within the normal course and scope of employment, these claims are barred. As noted above, **Plaintiff has not identified specifically what it is she alleges that Cabrera (as opposed to the other employees) allegedly did,** let alone anything that falls outside the normal course and scope of employment.

#### 1. The WCA Preempts Plaintiff's Claims

As an initial matter, Plaintiff's Remand argues, without citing any authority, that the WCA does not apply because Cabrera is not Plaintiff's employer. (Remand, p. 27). However, it is well settled that the WCA applies to both the company defendant, and defendant's employees. *See*, Cal. Labor Code Section 3601 (workers' compensation is "the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment . . . (except in situations not applicable here).)

With respect to whether the WCA covers hostile work environment and IIED, the California Supreme Court has already addressed this issue in detail. As noted in Defendants' Removal, in *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal. 3d 148 (1987), the California Supreme Court held that the WCA bars emotional distress claims, such as

Plaintiff's, which arise from the normal employment relationship. In *Cole*, the plaintiff claimed she suffered from emotional distress as a result of her supervisor's "campaign of harassment and job demotion" and, based on these allegations, filed a claim for IIED. *Id.* at 152. The California Supreme Court rejected the plaintiff's emotional distress claim based on the exclusive remedy provision of the WCA, holding as follows:

> An employee suffering emotional distress . . . may not avoid the exclusive remedy provisions of the [WCA] by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance. . ..

*Id.* at 160.

Following the holding in *Cole*, the California Supreme Court and Appellate Courts have repeatedly held in subsequent cases that emotional distress claims are barred by the exclusive remedy provisions of the WCA. *See, e.g.*, *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 752 (1992) ("[T]he proposition that intentional or egregious conduct is necessarily outside the scope of the workers' compensation scheme is erroneous. . .. Even intentional 'misconduct' may constitute a 'normal part of the employment relationship.'"); *Jones v. R.J. Donovan Corr. Facility*, 152 Cal. App. 4th 1367, 1382 (2007) (holding that a claim of infliction of emotional distress based on alleged discrimination and harassment was void because "[e]ven if the discriminatory conduct [the plaintiff] complained about may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions") (internal quotations and citations omitted).

Courts have routinely applied the workers' compensation preemption doctrine to prohibit these types of damages arising from alleged hostile work environment and IIED at work. Plaintiff has not alleged or identified any alleged conduct by Cabrera that would fall outside of the employment relationship. Accordingly, because Cabrera cannot be liable to Plaintiff on any theory alleged in the complaint, her joinder is a "sham," and their citizenship does not impact diversity for purposes of removal.

### 2. The Managerial Privilege Also Precludes Plaintiff's Claims

For the same reasons, Plaintiff's IIED and Hostile Work Environment claims also fail because, under the doctrine of managerial privilege, individual managers cannot be held personally liable for tort claims brought by other employees arising from actions taken within the course and scope of their managerial capacity. *McCabe v. Gen. Foods Corp.*, F.2d 1336 (9th Cir. 1987) (applying California law, the court held that plaintiff's tort claims against two individual managers failed as a matter of law because "[the managers'] actions, according to the complaint, had been in their managerial capacity . . . [and] ratified by [their employer]. . . . [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct, under California law, is privileged." (citation omitted)). Furthermore, when a supervisor cannot be personally liable for hostile work environment, "it follows he cannot be liable for the emotional distress claims either." *Smith v. Int'l Bhd. of Elect. Workers, Local Union* 11, 109 Cal. App. 4th 1637, 1658 (2003).

Because Plaintiff has not identified specifically what it is she alleges that Cabrera (as opposed to the other employees) allegedly did, let alone anything that falls outside the normal course and scope of employment, the managerial privilege applies and bars Plaintiff's claims against Cabrera.

### C. The Citizenship Of The Doe Defendants Must Be Disregarded When Assessing Diversity

Plaintiff's argument that she could at some later date amend to add unidentified California doe defendants is immaterial because, pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants **must** be disregarded for purposes of establishing removal jurisdiction. 28 U.S.C. section 1441(a)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names **shall** be disregarded.")

Thus, the existence of Doe defendants, 1-100, does not defeat diversity jurisdiction.

## V. PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED

Regardless of how the Court rules, Plaintiff's request for sanctions must be denied because Defendants had a reasonable basis to remove. Costs and fees in a motion for remand are only awarded as sanctions in extraordinary circumstances. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.").

There are no extraordinary circumstances here that would warrant the imposition of sanctions, nor did Plaintiff identify any in her Motion to Remand. Defendants' Removal and Opposition are certainly not frivolous. To the contrary, the basis for Defendants' removal was just, proper, and based on well-reasoned authority. Accordingly, Plaintiff's request for sanctions should be denied.

## VI. CONCLUSION

For all of these reasons, removal was proper under both federal question and diversity jurisdiction. Thus, the Court should deny Plaintiff's request to remand and certainly her request for sanctions.

DATED: August 29, 2024

Respectfully submitted,
SEYFARTH SHAW LLP

By: ______________________
Elisabeth Watson
Laura E. Heyne
Attorneys for Defendants
THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; and ROSA CABRERA

**WORD COUNT**

The undersigned, counsel of record for Defendants certifies that this brief contains 6491 words, which is less than the 7,000 word limit set by the Central District Local Rules.

DATED: August 29, 2024

Respectfully submitted,
SEYFARTH SHAW LLP

By: ______________________
Elisabeth Watson
Laura E. Heyne
Attorneys for Defendants
THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; and ROSA CABRERA